641 So.2d 50 (1994)
PALM BEACH COUNTY, Petitioner,
v.
William WRIGHT, et al., Respondents.
No. 81278.
Supreme Court of Florida.
June 2, 1994.
Rehearing Denied August 23, 1994.
Robert P. Banks, Asst. County Atty., West Palm Beach, and Robert H. Freilich of Freilich, Leitner & Carlisle, Kansas City, MO, for petitioner.
William P. Doney of Vance & Doney, P.A., West Palm Beach, for respondents.
Richard Grosso, Legal Director, Tallahassee, amicus curiae for 1000 Friends of Florida.
John J. Copelan, Jr., President, Fort Lauderdale, James L. Bennett, Sr. Asst. County Atty. and Barbara S. Monahan, Asst. County Atty., Fort Lauderdale and Michael B. Small, Broward County Planning Council, Fort Lauderdale, amici curiae for Florida Ass'n of County Attys., Inc. and Broward County.
Thornton J. Williams, Gen. Counsel and Thomas F. Capshew, Asst. Gen. Counsel, Tallahassee, amicus curiae for Dept. of Transp.
*51 Terrell K. Arline, Asst. Gen. Counsel, Tallahassee, amicus curiae for Dept. of Community Affairs.
Paul R. Bradshaw of Foley & Larder, Tallahassee, amicus curiae for Florida Chapter of American Planning Ass'n.
GRIMES, Chief Justice.
We review Palm Beach County v. Wright, 612 So.2d 709 (Fla. 4th DCA 1993), in which the court certified the following as a question of great public importance:
IS A COUNTY THOROUGHFARE MAP DESIGNATING CORRIDORS FOR FUTURE ROADWAYS, AND WHICH FORBIDS LAND USE ACTIVITY THAT WOULD IMPEDE FUTURE CONSTRUCTION OF A ROADWAY, ADOPTED INCIDENT TO A COMPREHENSIVE COUNTY LAND USE PLAN ENACTED UNDER THE LOCAL GOVERNMENT COMPREHENSIVE PLANNING AND LAND DEVELOPMENT REGULATION ACT, FACIALLY UNCONSTITUTIONAL UNDER Joint Ventures, Inc., v. Department of Transportation, 563 So.2d 622 (Fla. 1990)?
Wright, 612 So.2d at 710. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
The thoroughfare map referred to in the certified question is a portion of the traffic circulation element of the Palm Beach County Comprehensive Plan as adopted in Ordinance 89-17. The map defines certain transportation corridors along specified roadways throughout Palm Beach County as well as certain other locations designated for future roadway construction. The traffic circulation element of the Comprehensive Plan provides that the "County shall provide for protection and acquisition of existing and future right-of-way consistent with the adopted Thoroughfare Right-of-Way Protection Map." Wright, 612 So.2d at 710-11 (Anstead, J., concurring specially). The traffic circulation element continues by providing that the "Map is designed to protect identified transportation corridors from encroachment by other land use activities." Id. at 711 (Anstead, J., concurring specially). The map applies to all land development activities within unincorporated Palm Beach County. The land development activities are defined as including but not limited to residential, commercial, institutional, or industrial purposes. All development is required to be consistent with and provide for the transportation right-of-way shown on the thoroughfare map. The land use element of the Comprehensive Plan provides that no land use activity may be permitted within any roadway designated on the thoroughfare map that would impede future construction of the roadway. The land use element further provides that all development approvals and actions by the county must be consistent with the provisions contained in the Comprehensive Plan.
The roadway corridors are located on the thoroughfare map in varying widths from 80 to 240 feet. The thoroughfare map contains a 220-foot right-of-way corridor which includes Southern Boulevard, an existing roadway in Palm Beach County. Because Southern Boulevard is bound on the south by a canal, the future alignment of the right-of-way corridor would be measured northward from the existing south property line of Southern Boulevard. Respondents own property on the north side of Southern Boulevard. Therefore, a portion of their property lies within the corridor of the thoroughfare map.
The respondents filed suit attacking the constitutionality of the thoroughfare map. The trial court entered summary judgment against the county finding that the map as implemented by the land use element and traffic circulation element of the Comprehensive Plan was facially unconstitutional. The court determined that the map was in violation of the Fifth Amendment of the United States Constitution and article X, section 6 of the Florida Constitution. The court reasoned that the map was not a valid police regulation furthering the county's planning function for future growth and that it did not substantially advance a legitimate state interest. The court also held that the adoption of the map constituted a temporary taking of the respondents' property within the right-of-way corridor and ordered a jury trial to determine compensation for the taking. In a *52 split decision, the district court of appeal affirmed the judgment. The appellate court reasoned that the thoroughfare map was functionally indistinguishable from the reservation map this Court declared invalid in Joint Ventures, Inc. v. Department of Transportation, 563 So.2d 622 (Fla. 1990). The court also agreed that a taking had occurred.
Subsequent to the decision of the district court of appeal, this Court issued its opinion in Tampa-Hillsborough County Expressway Authority v. A.G.W.S. Corp., 640 So.2d 54 (Fla. 1994), which has a substantial bearing on this case. In A.G.W.S., we held that landowners with property inside the boundaries of maps of reservation invalidated by Joint Ventures, Inc., are not legally entitled to receive per se declarations of taking. We explained that subsections 337.241(2) and (3), Florida Statutes (1987), which authorized the filing of the maps of reservation, were held invalid because they did not meet the requirements of due process, not because the filing of such a map always resulted in a taking. Whether the filing of a map of reservation resulted in a taking of particular property would depend upon whether its effect was to deny the owner of substantially all of the economically beneficial or productive use of the land.
If the filing of a map of reservation under subsections 337.241(2) and (3) did not constitute a per se taking, it is clear that the adoption of the Palm Beach County thoroughfare map which designates corridors for future roadways would not constitute a per se taking. Therefore, at least one portion of the final judgment will have to be reversed. There remains, however, the question of whether the thoroughfare map is unconstitutional. On this point, the parties differ with respect to the applicability of Joint Ventures, Inc.
The respondents assert that the practical effect of the thoroughfare map is the same as that of the maps of reservation held invalid in Joint Ventures in that the thoroughfare map does not permit land use or activity within the designated corridors which would impede future roadway construction. However, the county argues that section 337.241, which prohibited construction within the limits of the recorded maps of reservation, was enacted for the sole purpose of reducing the future acquisition costs of roads. By contrast, the county's thoroughfare map is an unrecorded long-range planning tool tied to a comprehensive plan that outlines general roadway corridors and does not on its face delineate the exact routes of future roadways.
The county contends that the plan provides sufficient flexibility so that it cannot be determined whether a taking has occurred within the roadway corridors until the property owner submits a development approval application. When this occurs, the county asserts that it will be in the position to work with the property owner to (1) assure the best routes through the land that maximize the development potential; (2) offer development opportunities for clustering the increasing densities at key nodes and parcels off the corridors; (3) grant alternative and more valuable uses; (4) avoid loss of value that results in taking by using development rights transfer and credit for impact fees; and, if necessary, (5) alter or change the road pattern.
The county points out that the effect of designating road corridors is to increase most property values. Often, the increase in value of abutting property will more than offset any loss occasioned by the owner's inability to use land within the corridor. Therefore, the county argues that a determination of whether a taking has occurred within the corridor can only be made when a county has acted upon an application for development approval.
Palm Beach County's comprehensive plan was adopted pursuant to the requirements of the Local Government Comprehensive Planning and Land Development Regulation Act.[1] Section 163.3177(6)(b), Florida Statutes (1991), requires the comprehensive plan to contain "[a] traffic circulation element consisting of the types, locations, and extent of existing and proposed major thoroughfares and transportation routes." See Department of Transp. v. Lopez-Torres, 526 So.2d 674 *53 (Fla. 1988) (comprehensive plans are required to address the issue of existing and proposed transportation routes). Palm Beach County was further required by Florida Administrative Code Rule 9J-5.007(3)(b)(4) and (c)(4), promulgated by the Department of Community Affairs and approved by the legislature in section 163.3177(10), Florida Statutes (1991), to place measures in the comprehensive plan to protect existing and future rights-of-way from building encroachments and to preserve and acquire existing and future rights-of-way. One of the purposes of the thoroughfare map is to place property owners on notice as to the necessity and location of future roads. According to the comprehensive plan, this "allows land developers adequate time to plan their developments with proper road interfacing requirements."
There are many public benefits to be achieved through comprehensive planning of future road development.
Since the infrastructure of many of America's cities demands extensive redevelopment along sewer and transportation networks, the opportunity arises for a comprehensive integration of land use and transportation planning. Where mass and rapid transit is envisioned, the area from one-quarter to one-half of a mile in radius from stops should be planned for redevelopment. These areas should be developed at densities sufficient to sustain the planned transportation facility.
... .
... Additionally, commercial and industrial siting should follow this pattern so that sites may be concentrated along transportation corridors and thus facilitate access to employment and decreased energy consumption and automobile usage. The resulting pattern of community development would allow transit and other aspects of the infrastructure to take advantage of economics of scale.
James A. Kushner, Urban Transportation Planning, 4 Urb.L. & Pol'y 161, 173 (1981). Thus, there can be no question that the planning for future growth must include designation of the areas where roads are likely to be widened and future roads are to be built.
We are persuaded that the Palm Beach County thoroughfare map as implemented by the comprehensive plan is not facially invalid. At least with respect to existing streets, the roadway corridors are analogous to set-back requirements. Many years ago this Court held that a city may establish building set-back lines through the exercise of police power and without compensation to the property owners. City of Miami v. Romer, 58 So.2d 849 (Fla. 1952). Furthermore, the owners most likely to benefit from planned road construction are those whose properties are adjacent to transportation corridors. Under the concurrency requirements of section 163.3177(10)(h), Florida Statutes (1991), development will be curtailed unless roads are available to accommodate the impact of such development. Therefore, projects closest to new roads are likely to benefit the most from construction of the roads even if a portion of the owner's property must be reserved for road construction.
The thoroughfare map differs in several ways from the maps of reservation invalidated by Joint Ventures. The thoroughfare map only limits development to the extent necessary to ensure compatibility with future land use. The thoroughfare map is not recorded as were maps of reservation and may be amended twice a year. The road locations within the transportation corridors shown on the thoroughfare map have not been finally determined. Unlike the Department of Transportation which recorded the maps of reservation, Palm Beach County is a permitting authority which has the flexibility to ameliorate some of the hardships of a person owning land within the corridor. Section 337.241 precluded the issuance of all development permits for land within the recorded map. Moreover, the only purpose of that statute was to freeze property so as to depress land values in anticipation of eminent domain proceedings. While the Palm Beach County thoroughfare map can have the effect of adversely affecting land values of some property, it also serves as an invaluable tool for planning purposes. Thus, we hold that the adoption of the thoroughfare map is the *54 proper subject of the county's police power which substantially advances a legitimate state interest. In fact, the county's ability to plan for future growth would be seriously impeded without the thoroughfare map.
At the same time, we recognize that as applied to certain property, the thoroughfare map may result in a taking. In rejecting a facial challenge to certain restrictive mining regulations in favor of "an applied" determination, the United States Supreme Court aptly noted:
"[T]his Court has generally `been unable to develop any "set formula" for determining when "justice and fairness" require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons.' Rather, it has examined the `taking' question by engaging in essentially ad hoc, factual inquiries that have identified several factors  such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action  that have particular significance."
Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 295, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (quoting Kaiser Aetna v. United States, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979) (citations omitted)).
Therefore, we are convinced that the taking issue may only be determined upon an individualized basis because the various property owners' interests will be different and will be affected by the thoroughfare map in a differing manner. As noted by the Court in Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 130, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), "`[t]aking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." See Department of Transp. v. Weisenfeld, 617 So.2d 1071 (Fla. 5th DCA 1993) (In deciding whether a governmental regulation deprives an owner of substantially all economically beneficial use of land, the owner's affected property interest must be viewed as a whole.), approved, 640 So.2d 73 (Fla. 1994). Normally, we would expect the issue to be precipitated by a property owner's application for a development permit. By virtue of the county's response, the owner will then know what can be done with the property. In any event, an aggrieved owner may always bring an inverse condemnation proceeding which if successful will result in a payment for the taking as well as the recovery of attorney's fees.
We answer the certified question in the negative and quash the decision below.
It is so ordered.
OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] §§ 163.3161-.3243, Fla. Stat. (1991).